**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

IRVING THOMAS MANDERVILLE,

                            Plaintiff,

v.                                                      3:17-CV-316
                                                        (CFH)

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

                            Defendant.
_____

**APPEARANCES:**                              **OF COUNSEL:**

LACHMAN, GORTON LAW FIRM          PETER A. GORTON, ESQ.
 Counsel for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, New York 13761-0089

U.S. SOCIAL SECURITY ADMIN.              JAMES DESIR, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, New York 10278

**CHRISTIAN F. HUMMEL,**
**U.S. Magistrate Judge**

<u>**MEMORANDUM-DECISION & ORDER**</u>

        Currently before the Court, in this Social Security action filed by Irving Thomas

Manderville ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are Plaintiff's motion

for judgment on the pleadings and Defendant's motion for judgment on the pleadings.

(Dkt. Nos. 12, 15.)  For the reasons set forth below, Plaintiff's motion for judgment on

the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff was born in 1961, making him 51 years old at the alleged onset date and 54 years old at the date of the ALJ's decision.  Plaintiff reported completing the tenth grade.  Plaintiff has past work as a roofer.  At the initial level, Plaintiff alleged disability due to a back injury.

### B.    Procedural History

Plaintiff applied for a period of disability and disability insurance benefits and Supplemental Security Income on September 20, 2013, alleging disability beginning September 2, 2013.  Plaintiff's application was initially denied on November 27, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Elizabeth W. Koennecke on October 5, 2015.  On November 17, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 7-21.)[1]  On February 27, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

---

[1]     The Administrative Transcript is found at Dkt. No. 10.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

### C.    ALJ Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 12-17.)  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013.  (Id. at 12.)  Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 2, 2013, the alleged onset date.  (Id.)  Third, the ALJ found that Plaintiff's cervical and lumbar stenosis are severe impairments.  (Id. at 12-13.)  Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. at 13.)  Specifically, the ALJ considered Listing 1.04 (disorders of the spine).  (Id.)  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work.  (Id. at 14.)  Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work.  (Id. at 16.)  Seventh, and last, the ALJ found that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.  (Id. at 16-17.)  The ALJ therefore concluded that Plaintiff is not disabled.

### II.    ARGUMENTS

#### A.    Plaintiff's Motion for Judgment on the Pleadings

Generally, Plaintiff makes five arguments in support of his motion for judgment on the pleadings.  (Dkt. No. 12, at 10-24 [Pl.'s Mem. of Law].)  First, Plaintiff argues that the ALJ improperly substituted her opinion for all the medical opinions.  (Id. at 10-17.)  Specifically, Plaintiff argues that the evidence shows he cannot meet customary

3

employer standards for staying on task, citing the opinions of treating orthopedic surgeon Matthew Bennett, M.D., and treating nurse practitioner Cori Pane, FNP.  (Id. at 10-11.)  Plaintiff argues that these opinions indicate he would be off-task more than 33 percent of the day, with Ms. Pane's opinion also indicating he would be absent from work more than four days per month.  (Id. at 10.)  Plaintiff argues that the ALJ improperly failed to incorporate these undisputed opinions into the RFC.  (Id. at 11-13.)

Plaintiff additionally argues that he cannot meet the lifting demands of light work and again cites the opinions of Dr. Bennett and Ms. Pane.  (T. 13.)  Plaintiff also argues that the opinion of consultative examiner Justine Magurno, M.D., does not support the ALJ's conclusion that Plaintiff can meet the lifting demands of light work, but rather supports the contrary opinions of Ms. Pane and Dr. Bennett.  (Id. at 14.)  Plaintiff further argues that the opinion of treating physician Kyung In Kim, M.D., does not constitute substantial evidence supporting the ALJ's conclusion.  (Id. at 15-17.)

Second, Plaintiff argues that the ALJ did not properly weigh the opinions of record.  (T. 17-23.)  Plaintiff argues that the ALJ failed to apply the treating physician rule and erred in affording less weight to Dr. Bennett's opinion.  (Id. at 17-21.)  Specifically, Plaintiff argues that the ALJ never analyzed the regulatory factors in weighing Dr. Bennett's opinion.  (Id. at 21.)  Plaintiff additionally argues that the ALJ erred in weighing Dr. Magurno's opinion.  (Id. at 21-22.)  Specifically, Plaintiff argues that the ALJ failed to give any reason for why she afforded only some weight to Dr. Magurno's opinion and failed to analyze the regulatory factors in relation to this opinion.  (Id. at 21-22.)  Plaintiff also argues that the ALJ improperly weighed the opinion of Ms. Pane.  (Id. at 22-23.)  Specifically, Plaintiff argues that the ALJ erred in rejecting Ms.

Pane's opinion regarding off-task time and absenteeism based on a lack of such limitations from Plaintiff's "orthopedic surgeon."[2]  (Id.)

Third, Plaintiff argues that the ALJ erred by analyzing this case under Title II only, which is limited by Plaintiff's date last insured. (T. 18-19.)  Specifically, when discussing the ALJ's analysis of Dr. Bennett's opinion, Plaintiff argues that the ALJ failed to analyze whether Plaintiff could perform light work after the date last insured. (Id. at 19.)

Fourth, Plaintiff argues that he is disabled under the Medical-Vocational Guidelines because he cannot meet employer tolerances for attendance and/or staying on task and the ALJ failed to properly assess this issue. (Id. at 23.)  In further support of his argument that he qualifies as disabled under the Medical-Vocational Guidelines, Plaintiff argues that he is unable to meet the lifting demands of light work and is instead limited to sedentary work, is closely approaching advanced age, is unable to perform past work as a roofer, and does not have transferable skills to a sedentary job. (Id.)

Fifth, Plaintiff argues that the ALJ improperly failed to consult with a vocational expert ("VE") because the record shows significant non-exertional limitations in his abilities to maintain attendance, stay on task, squat, and bend. (T. 23-24.)  Specifically, Plaintiff argues that the ALJ should have consulted with a VE to ascertain the impact of these non-exertional limitations on the available occupational base and to determine whether Plaintiff has transferable skills to the sedentary (or even light) levels of work. (Id. at 24.)

---

[2]    The Court notes that the ALJ primarily refers to Dr. Kim as a "treating source familiar with the claimant's progress" and subsequently identifies Dr. Kim as Plaintiff's "treating orthopedist." (T. 15; Dkt. No. 12, at 18 [Pl.'s Mem. of Law]; Dkt. No. 15, at 14 n. 4 [Def.'s Mem. of Law].)  Although Dr. Kim and Dr. Bennett were both treating providers from Tier Orthopedic Associates, it appears that, within the context of the ALJ's decision, the ALJ was referring to Dr. Kim when she indicated Plaintiff's "treating orthopedist." (T. 577-603.)

**B. Defendant's Motion for Judgment on the Pleadings**

Generally, Defendant makes two arguments in support of her motion for judgment on the pleadings. (Dkt. No. 15, at 7-18 [Def.'s Mem. of Law].) First, Defendant argues that substantial evidence supports the ALJ's RFC assessment. (Id. at 7-17.) Specifically, Defendant argues that, in determining Plaintiff's RFC, the ALJ discussed and considered diagnostic evidence, cited examination and treatment notes, considered evidence of Plaintiff's daily activities, and relied on opinion evidence. (Id. at 7-15.) Defendant also argues that the ALJ did not err in evaluating the opinions of Dr. Bennett and Ms. Pane and that the evidence record does not provide a basis to conclude that Plaintiff would be off-task for a third of the day. (Id. at 14-15.)

With regard to the opinion evidence, Defendant argues that the ALJ gave greatest weight to Dr. Kim's opinion and that Plaintiff's right shoulder injury did not undermine the validity of Dr. Kim's assessment relating to Plaintiff's thoracolumbar spine impairment. (T. 8-10.) Defendant argues that the ALJ found that Plaintiff's shoulder impairment was not a severe impairment and attributed Plaintiff's complaints about his arm to his cervical spine impairment. (Id. at 10.) Defendant points out that Plaintiff relies heavily on evidence prior to his August 2014 right shoulder surgery in support of his argument that Dr. Kim's opinion did not accommodate his right shoulder limitations, which Defendant argues fails to overcome the weight of substantial evidence supporting the ALJ's assessment of Dr. Kim's opinion. (Id. at 10-11.) Defendant also argues that, contrary to Plaintiff's argument that Dr. Kim's February 2014 opinion was overly vague, Dr. Kim imposed exertional limitations that the ALJ could reasonably interpret. (Id. at 11-12.)

Defendant also argues that the ALJ relied in part on Dr. Magurno's opinion in support of the RFC. (T. 12-14.) Specifically, Defendant argues that, with the exception of Dr. Magurno's finding on Plaintiff's squatting limitations which the ALJ reasonably rejected as inconsistent with Dr. Kim's opinion, the physical RFC was largely consistent with Dr. Magurno's opinion. (Id. at 12-13.) Defendant argues that the ALJ made clear that she discounted Dr. Magurno's squatting limitation to the extent it conflicted with Dr. Kim's treating source opinion and, therefore, the ALJ effectively evaluated Dr. Magurno's opinion against the weight of substantial evidence. (Id. at 13.) Defendant also argues that Plaintiff has not shown that squatting is required to perform light work and that Plaintiff has not explained how the ALJ's finding that Plaintiff could perform light work did not accommodate Dr. Magurno's marked limitation for lifting. (Id. at 12-13).

Defendant also argues that the ALJ properly considered the regulatory factors when assessing Dr. Magurno's opinion, including identifying her as an examining source with extensive program and professional expertise. (T. at 12-13). Defendant additionally notes that the ALJ gave some weight to Ms. Pane's October 2015 opinion, rejecting the parts of the opinion pertaining to off-task time and absenteeism and assessing slightly less restrictive exertional limitations. (Id. at 14.) Defendant argues that Ms. Pane's opinion on Plaintiff's physical limitations did not vastly differ from the RFC, and therefore, also generally supports it. (Id.)

Defendant additionally argues that the ALJ compared Dr. Bennett's opinion with Dr. Kim's opinion and, therefore, evaluated Dr. Bennett's opinion against the weight of substantial evidence. (T. 15-16.) Defendant notes that the ALJ expressly assigned

greater weight to the sitting, standing, and walking limitations opined by Dr. Bennett, but less weight to Dr. Bennett's opined lifting and carrying limitations because the ALJ assessed more favorable exertional limitations than those opined by Dr. Bennett in some respects. (Id.) Defendant further argues that the ALJ properly evaluated Dr. Bennett's opinion by discussing the nature of the treatment relationship, noting that the ALJ pointed out Dr. Bennett did not have the same extended treatment relationship during the adjudicative period as Plaintiff had with some of her other providers whose opinions the ALJ afforded more weight (rather than Plaintiff's argument indicating that the ALJ believed Dr. Bennett did not see Plaintiff after 2013 or viewed his opinion only in the context of a Title II claim). (Id. at 16-17.)

Defendant also argues that the ALJ was not required to weigh each regulatory factor expressly (including Dr. Bennett's specialization as argued by Plaintiff) and that the ALJ's statement concerning this opinion could reasonably be construed as referring to him as a specialist. (T. 17.) Defendant further argues that the ALJ partly discounted Dr. Bennett's opinion to the extent it was inconsistent with substantial evidence, and that inconsistency alone could provide an independently sufficient basis for discounting this opinion. (Id.) Defendant argues that any technical error by the ALJ in failing to consider Dr. Bennett's specialization would be harmless under these circumstances and does not overcome the overall good reasoning and substantial evidence on which the ALJ relied in support of her evaluation of Dr. Bennett's opinion. (Id.)

Defendant lastly notes that Plaintiff does not challenge the ALJ's evaluation of his subjective statements of the limiting effects of his impairments. (T. 15.) Defendant

argues that the ALJ's finding on Plaintiff's subjective statements, together with the ALJ's overall analysis of the evidence, supports the RFC assessment. (Id.)

Second, Defendant argues that substantial evidence supports the ALJ's Step Five finding. (T. 17-18.) Specifically, Defendant argues, that because the ALJ properly did not assess any non-exertional limitations, she had no obligation to consider such non-exertional limitations at Step Five, and could therefore properly rely on the Medical-Vocational Guidelines to support her Step Five finding without relying on a VE. (Id. at 18.)

### C. Plaintiff's Reply

Generally, Plaintiff makes two arguments on reply. (Dkt. No. 18, at 1-5 [Pl.'s Reply Mem. of Law].) First, Plaintiff argues that the ALJ's RFC determination is not supported by medical opinion and that the ALJ did not cite to any medical opinion stating that Plaintiff can frequently lift up to ten pounds or can meet employer tolerances for work pace/staying on task and/or attendance. (T. 1.) In addressing the opinion evidence of record, Plaintiff argues that the opinions of Dr. Bennett and Ms. Pane are not contradicted and that the ALJ did not properly choose between submitted medical opinions, but improperly substituted her own opinion. (Id.) Plaintiff argues that the ALJ improperly found Dr. Kim's opinion that Plaintiff can perform light work with no heavy lifting, pushing or pulling is consistent with the ability to perform light work because Dr. Kim did not specify what weight limits Plaintiff could lift and did not provide the necessary function-by-function assessment relevant to the RFC analysis. (Id. at 2.) Plaintiff additionally argues that there is no basis for the ALJ's failure to include the work

pace/on task or attendance limitations opined by his treating sources because these limitations remain undisputed since Dr. Kim offered no opinion on these areas. (Id.)

Plaintiff also argues that Dr. Magurno's opined marked limitation in the ability to squat does not support the conclusion that Plaintiff can squat occasionally or for greater amounts, and that Dr. Magurno's opinion is contrary to the ALJ's failure to include any limitation in squatting/crouching. (T. 2-3.) Plaintiff argues that a limitation in squatting consistent with Dr. Magurno's opinion could impact the occupational base and preclude reliance on the Medical-Vocational Guidelines, requiring VE testimony. (Id. at 3.)

Second, Plaintiff argues that the ALJ erred in making the credibility assessment. (T. 4-5.) Specifically, Plaintiff argues that his history of alcohol use and inconsistent statements regarding the duration of his sobriety cited by the ALJ do not pertain to his symptoms and are legally improper considerations. (Id.) Plaintiff argues that the ALJ violated Social Security Ruling ("SSR") 16-03 in considering these matters, infecting her decision with an improper character/credibility determination. (Id. at 5.) Plaintiff also argues that the ALJ erred in considering Plaintiff's described daily activities in relation to his subjective statements because, even if Plaintiff could perform many of the same functions that would be needed in a work environment, there must be evidence that he can perform such functions on a full time basis. (Id. at 3-4.) Plaintiff argues that the ALJ did not point to any evidence that he engages in activities of daily living to a degree consistent with full time work. (Id. at 4.)

### III. LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo*
whether an individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health &
Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's
determination will be reversed only if the correct legal standards were not applied, or it
was not supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 986
(2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied
correct legal principles, application of the substantial evidence standard to uphold a
finding of no disability creates an unacceptable risk that a claimant will be deprived of
the right to have her disability determination made according to the correct legal
principles."); accord Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983), Marcus v. Califano,
615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to
"more than a mere scintilla," and has been defined as "such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."  Richardson v.
Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed
susceptible to more than one rational interpretation, the Commissioner's conclusion
must be upheld.  Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial
evidence, a reviewing court considers the whole record, examining evidence from both
sides, because an analysis of the substantiality of the evidence must also include that
which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If
supported by substantial evidence, the Commissioner's finding must be sustained "even
where substantial evidence may support the plaintiff's position and despite that the
court's independent analysis of the evidence may differ from the [Commissioner's]."

Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Disability Standard

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

12

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); accord McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  Barnhart v. Thompson, 540 U.S. 20, 24 (2003).

## IV.    ANALYSIS

### A. Opinion Evidence and Plaintiff's RFC

After careful consideration, the Court answers this question in the negative for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 12, at 10-23 [Pl.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c), 416.927(c).  "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'"  Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008)).  However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Greek*, 802 F.3d at 375 (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not

required to explicitly go through each and every factor of the Regulation." <u>Blinkovitch v.</u>
<u>Comm'r of Soc. Sec</u>., 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017),
<u>adopted by</u> 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing <u>Atwater v. Astrue</u>, 512 F.
App'x 67, 70 (2d Cir. 2013) (summary order).  After considering these factors, "the ALJ
must 'comprehensively set forth [his] reasons for the weight assigned to a treating
physician's opinion.'" <u>Greek</u>, 802 F.3d at 375 (quoting <u>Burgess</u>, 537 F.3d at 129).  The
factors for considering opinions from non-treating medical sources are the same as
those for assessing treating sources, with the consideration of whether the source
examined the claimant or not replacing the consideration of the treatment relationship
between the source and the claimant.  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-
(6).

RFC is defined as "'what an individual can still do despite his or her limitations
. . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work
activities in an ordinary work setting on a regular and continuing basis.'"  <u>Pardee v.</u>
<u>Astrue</u>, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting <u>Melville v. Apfel,</u> 198 F.3d
45, 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ
must consider a claimant's physical abilities, mental abilities, symptomology, including
pain and other limitations which could interfere with work activities on a regular and
continuing basis."  <u>Pardee</u>, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)).
"Ultimately, '[a]ny impairment-related limitations created by an individual's response to
demands of work . . . must be reflected in the RFC assessment.'"  <u>Hendrickson v.</u>
<u>Astrue</u>, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting Social
Security Ruling ("SSR") 85-15, 1985 WL 56857, at *8).

When assessing a claimant's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability.  See also Frey ex rel. A.O. v. Astrue, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); Little v. Colvin, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence."  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

Here, the ALJ found that Plaintiff has the RFC to perform the full range of light work.  (T. 14.)  Plaintiff argues that the ALJ failed to properly weigh the opinions of record and improperly substituted her opinion for that of competent medical professionals and that the opinion evidence, if properly weighed, shows that he cannot meet the lifting demands of light work.  (Dkt. No. 12, at 10-23 [Pl.'s Mem. of Law].)  The Court finds Plaintiff's arguments regarding the ALJ's analysis of the opinion evidence persuasive.

**1. Opinion Evidence**

On November 18, 2013, consultative examiner Dr. Magurno noted that Plaintiff reported still having a lot of pain following a September 2013 fall from a BMX bike which resulted in spinal fractures.[3]  (T. 223-45, 254.)  Plaintiff reported cooking seven times a week, showering and dressing seven days a week, watching television, and cleaning as needed with his roommate doing the laundry and shopping.  (Id. at 255.)  On examination, Dr. Magurno observed that Plaintiff had a normal gait and stance and a one-third of full squat; he used no assistive devices, needed no help changing for the exam or getting on and off exam table, was able to rise from the chair without difficulty, and could walk on his toes without difficulty but had difficulty with heel walking.  (Id.) He had limited range of motion in the cervical spine, lumbar spine, bilateral shoulders, wrists and right ankle; straight leg raising ("SLR") testing was negative bilaterally; he had full range of motion in the bilateral elbows, forearms, hips and knees; his joints were stable and nontender; deep tendon reflexes ("DTRs") were physiologic and equal in both the upper and lower extremities and sensation was intact to light touch; strength was full in both the upper extremities and lower extremities except for right foot dorsiflexion, which was 4/5; and his hand and finger dexterity was slightly slowed with full grip strength bilaterally.  (Id. at 256-57.)  A lumbosacral spine x-ray showed an old compression fracture of L2, degenerative disc disease at L4-L5, degenerative spondylosis at L2-L3, Grade I spondylolisthesis of L5 over S1 with sponylolysis at L5, and a transitional S1 vertebral body.  (Id. at 259.)

---

[3]    Scans from September 2013 showed acute fractures of the right transverse process of L1-L2, an acute mild compression deformity involving the superior endplate of T7 without significant bony retropulsion or extension in posterior elements, chronic appearing moderate compression fractures of the superior endplates of T11 and L1, and significant multilevel degenerative changes including intervertebral disk space narrowing and endplate osteophytes in the cervical spine.  (T. 223, 238-43.)

Dr. Magurno diagnosed low back pain status post fracture, neck arthritis, hepatitis C, status post fracture right leg, and tobacco abuse. (T. 257.) She opined that Plaintiff "has marked limitations for squatting and lifting. He has moderate limitations for bending, neck motion, and carrying. He has mild limitations for reaching, pushing, and pulling." (Id.) The ALJ afforded some weight to Dr. Magurno's opinion because it was rendered after a thorough examination by a physician with extensive program and professional expertise, but rejected significant squatting limitations greater than those which would be found in light work, by definition, because the treating source -- apparently meaning Dr. Kim -- did not find any such limitations. (Id. at 15.)

On February 3, 2014, Dr. Kim at Tier Orthopedic opined in a treatment note comment that "[r]egarding the thoracolumbar area, [Plaintiff] can do light duty - no heavy lifting, pushing or pulling." (T. 582.) The ALJ afforded great weight to Dr. Kim's opinion, noting that it was consistent with the ability to perform the full range of light work and was from a treating source familiar with Plaintiff's progress given that Dr. Kim was familiar with Plaintiff's back and neck issues when he was treating him. (Id. at 15.)

On August 26, 2015, treatment provider Cori Pane, FNP indicated Plaintiff's conditions included neck and low back pain associated with moderate to severe spinal stenosis and degenerative changes on MRI; she noted that Plaintiff complained of pain in the neck radiating down both arms and that his subjective complaints were consistent with changes on MRI. (T. 373.) Ms. Pane opined that Plaintiff's conditions and/or any side effects of medication would cause pain and fatigue, diminish concentration and work pace, and cause him to need to rest at work; he would be off-task more than 33 percent of the day; and his conditions would be expected to produce good days and bad

days.  (Id. at 373.)  Ms. Pane also opined that Plaintiff would miss more than four days

of work per month and that his medications included morphine and oxycodone, which

caused fatigue requiring rest.  (Id. at 374.)  Ms. Pane opined that Plaintiff could sit,

stand, and walk for four hours each in an eight-hour day, should change positions every

60 minutes, and could occasionally lift over 10 pounds.  (Id.)  She indicated these

limitations had been present since December 17, 2013.  (Id.)

The ALJ afforded some weight to Ms. Pane's opinion based on the length and

nature of treatment and noted that the report of a healthcare provider who is not an

acceptable source cannot be granted controlling weight in the same manner as an

opinion from an acceptable source.  (T. 15.)  The ALJ noted that, because Plaintiff's

treating orthopedist (again, apparently meaning Dr. Kim) did not find any limits for off-

task/missed worked and indicated he could perform light duty, these limitations were

rejected.  (Id.)

On September 1, 2015, Dr. Bennett of Tier Orthopedic indicated Plaintiff's

conditions included neck pain, degenerative disc disease at C4-C5, C5-C6 and C6-C7,

and varying degrees of foraminal stenosis at C3-C4, C4-C5, C5-C6, and C6-C7.  (T.

375.)  Dr. Bennett opined Plaintiff's conditions and/or any side effects of medication

would cause pain and fatigue, diminish concentration and work pace, and cause Plaintiff

to need to rest at work; he would be off-task more than 33 percent of the day; and his

conditions would be expected to produce good days and bad days.  (T. 375.)  Dr.

Bennett was uncertain how many days per month Plaintiff would miss of work.  (Id.)  He

noted that Plaintiff's medications included morphine and oxycodone, which was not

prescribed by Tier Orthopedic, and that the side effects of medication included fatigue,

dizziness, drowsiness, and the inability to operate heavy machinery.  (Id.)  Dr. Bennett

opined that Plaintiff could sit for eight hours and stand/walk for six hours out of an eight-

hour day, should change positions every thirty minutes, and could frequently lift up to

five pounds, occasionally lift five to ten pounds, and never lift over ten pounds.  (Id.)  Dr.

Bennett indicated that these limitations had been present since 2014.  (Id.)

    The ALJ indicated that Dr. Bennett's opinion was "entitled to less weight than the

sources treating [Plaintiff] during the relevant period, a source who was a specialist.

Greater weight is giv[en to] the lifting[/]carrying as indicated by Dr. Kim but the full range

of sitting, standing and walking was found as indicated by Dr. Bennett."  (T. 16.)  The

ALJ also noted that that less weight was afforded to Dr. Bennett's opinion because "Dr.

Bennett's name does not appear on any documents in 2013 and there is no indication

that Dr. Bennett has continued to treat the claimant subsequent to 2013 although he put

the limits beginning in 2014."  (Id.)


## 2.  ALJ's Analysis of Opinion Evidence

    The Court finds Plaintiff's arguments regarding the ALJ's consideration of the

opinion evidence persuasive given the puzzling logic and multiple misstatements made

by the ALJ, primarily in her analysis of the opinions from Drs. Magurno, Kim, and

Bennett.  The ALJ has the responsibility of reviewing all the evidence before her,

resolving inconsistencies, and making a determination consistent with the evidence as a

whole.  See Bliss v. Colvin, 13-CV-1086, 2015 WL 457643, at *7 (N.D.N.Y., Feb. 3,

2015).  "[I]t is the province of the ALJ to consider and resolve conflicts in the evidence

as long as the decision rests upon 'adequate findings supported by evidence having

rational probative force.'" Camarata v. Colvin, 14-CV-0578, 2015 WL 4598811, at *9 (N.D.N.Y. July 29, 2015) (quoting Galiotti v. Astrue, 266 F. App'x 66, 67 (2d Cir. 2008) (summary order). However, the ALJ is required to provide rationale in the written decision sufficient to allow this Court to conduct an adequate review of her findings. See Booker v. Astrue, 07-CV-0646, 2011 WL 3735808, at *5 (N.D.N.Y. Aug 24, 2011) ("The crucial factors in an ALJ's decision must be set forth in sufficient detail as to enable meaningful review by the court.") (citing Ferraris, 728 F.2d at 587); Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 173 (N.D.N.Y. 2010) ("The ALJ must 'build an accurate and logical bridge from the evidence to [his] conclusion to enable a meaningful review.'") (quoting Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002)). The Court finds that, in light of a lack of sufficient explanation by the ALJ for her opinion analysis and/or misstatements made by the ALJ within that analysis, it cannot be conclusively said that the ALJ's analysis and resulting RFC determination are supported by substantial evidence for the following reasons.

First, the ALJ afforded some weight to Dr. Magurno's opinion, which indicated marked limitations for squatting and lifting. (T. 15, 257.) It is concerning that the ALJ appears to have rejected the squatting limitation opined by Dr. Magurno based on Dr. Kim's opinion, an opinion that does not address squatting. (T. 15.) Further, although the ALJ explained that she rejected Dr. Magurno's significant squatting limitations because a "treating source" -- presumably Dr. Kim -- had not found any, she did not address Dr. Magurno's opined marked limitations in lifting and did not otherwise address such lifting limitations when discussing Dr. Magurno's opinion. (T. 15.) The

Court is therefore left to speculate as how, or if, the ALJ considered those limitations determining the RFC for a full range of light work.

Second, although it is clear that the ALJ afforded great weight to Dr. Kim's opinion in determining Plaintiff's RFC, her analysis of Dr. Bennett's opinion is puzzling at best. (T. 16.) The ALJ stated that Dr. Bennett's name does not appear on any documents in 2013, and that there was no indication that he had continued to treat Plaintiff subsequent to 2013, noting that Dr. Bennett opined limitations beginning in 2014. (Id.) Although the ALJ is correct insofar as the record indicates that Dr. Bennett did not personally treat Plaintiff until August 2014, both Dr. Kim and Dr. Bennett were providers[4] at Tier Orthopedic, with Dr. Kim's treatment notes starting in October 2013, shortly after Plaintiff's back injury. (T. 577-89, 611-12.) Additionally, contrary to the ALJ's statement that there was no indication that Dr. Bennett had continued to treat Plaintiff subsequent to 2013, there are multiple treatment notes from Dr. Bennett throughout 2014 and 2015. (T. 587-603.)

Third, the distinction the ALJ made indicating that Dr. Bennett's opinion was "entitled to less weight than the sources treating him during the relevant period, a source who was a specialist" presents a twofold problem for the Court. (T. 16.) As Plaintiff argues, this case pertains to both a Title II and Title XVI application, and such the ALJ's analysis of Dr. Bennett's opinion would not be limited or affected by a "relevant period" constraint in regard to Plaintiff's Title XVI application. (Dkt. No. 12, at 18-19 [Pl.'s Mem. of Law].) Whether the ALJ analyzed this case solely under Title II (as Plaintiff argues) is unclear, it is also unclear why the ALJ would insinuate that there was

---

[4]     The Court notes that another provider at Lourdes Family Practice apparently noted Plaintiff was followed by Dr. Kim for shoulder pain and Dr. Bennett for neck and back pain. (T. 526.)

a "relevant period" constraint when discussing Dr. Bennett's opinion without acknowledging Plaintiff's Title XVI application.  Further, the record indicates that Dr. Bennett was also a specialist like Dr. Kim because they were presumably both treating orthopedic specialists at Tier Orthopedic.  (T. 577-603.)

Further exacerbating the problems with the ALJ's analysis, the ALJ also indicated that Dr. Bennett's opinion was entitled to less weight for multiple reasons -- including Dr. Bennett's apparent lack of specialty, lack of treatment of Plaintiff in 2013, and lack of treatment of Plaintiff subsequent to 2013 -- but incongruently afforded greater weight to Dr. Bennett's indication that Plaintiff can perform the full range of sitting, standing, and walking, without addressing the reasons she previously cited for discounting Dr. Bennett's other proposed limitations. (T. 16.)

The ALJ's analysis of Dr. Bennett's opinion is undermined by what appears to be a failure to closely review the entire record, as both Dr. Kim and Dr. Bennett's treatment notes appear in Exhibit 14, which was before the ALJ at the time of her decision, though apparently submitted subsequent to the administrative hearing.  (T. 21, 577-676.)  That the ALJ failed to perform a close review is reinforced by the ALJ's indication that Plaintiff had undergone shoulder surgery in August 2014.  (Id. at 14-15, citing Id. at 529.) Specifically, the ALJ noted that Plaintiff had undergone a surgical repair of a full-thickness tear of the supraspinatus tendon on August 22, 2014.  (Id.)  The August 15, 2014, preoperative visit the ALJ cited did indicate that right rotator cuff surgery was scheduled for August 22, 2014.  (Id. at 529.)  However, the Court's review of the record does not indicate whether Plaintiff actually underwent that shoulder surgery in August 2014.  Rather, treatment notes in December 2014 indicate Plaintiff had delayed the

shoulder surgery in order to complete treatment for Hepatitis C, and that surgery was not rescheduled with Dr. Bennett until September 2015.  (Id. at 526, 602-03.)  The record does not otherwise conclusively demonstrate that Plaintiff actually underwent shoulder surgery before the ALJ's November 17, 2015, decision.  This and other misstatements of the record discussed above leave the Court unable to conclude that the ALJ adequately reviewed the entire record when she weighed the opinion evidence and determined Plaintiff's RFC.

For the above reasons, the Court is unable to discern with certainty that substantial evidence supports the ALJ's underlying rationale for discounting Dr. Bennett's treating source opinion, nor determine whether the ALJ's consideration of Dr. Magurno and Dr. Kim's opinions is supported by substantial evidence.  Therefore, remand is required on this basis.

## B.  Credibility Determination

Because the Court finds that remand is necessary and the ALJ will be required to address the above-noted deficiencies on remand, the Court declines to reach a finding regarding the arguments on the ALJ's credibility determination.  (Dkt. No. 15, at 15 [Def.'s Mem. of Law]; Dkt. No. 18, at 4-5 [Pl.'s Reply Mem. of Law].)  The defendant should conduct a new credibility determination as part of the review on remand.

## C.  ALJ's Step Five Determination

Because remand is necessary and the ALJ will be required to address the above-noted deficiencies in considering the opinion evidence when issuing a new decision, the

Court declines to reach a finding regarding Plaintiff's arguments that (1) the ALJ erred at Step Five in failing to consult with a VE, and (2) that Plaintiff is disabled under the Medical-Vocational Guidelines.  (Dkt. No. 12, at 16-17, 23-24 [Pl.'s Mem. of Law].) However, on remand, the defendant should conduct a new Step Five determination and consult with a VE, if necessary, to assess whether Plaintiff meets the criteria for a finding of disabled under a Medical-Vocational Rule.


## V. CONCLUSION

**WHEREFORE**, for the reasons stated herein, it is hereby

    **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **GRANTED**; and it is further

    **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 15) is **DENIED**; and it is further

    **ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 U.S.C. § 405(g) for proceedings consistent with this Decision and Order.

Dated: June 20, 2018
       Albany, New York

                    Christian F. Hummel
                    U.S. Magistrate Judge

24